UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

IRVIN W. MCKAY AND CINDY L.      )
MCKAY,                           )
                                 )
           Plaintiffs,           )
                                 )
     v.                          )          No. 1:23-cv-00361-LEW
                                 )
FAY SERVICING, LLC,              )
                                 )
           Defendant.            )

## ORDER ON DEFENDANT'S MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

Plaintiffs Irvin W. McKay and Cindy L. McKay ("the McKays") are mortgagors who allege unlawful conduct by their mortgage servicer, Defendant Fay Servicing, LLC. The matter is before the Court on the Defendant's Motion to Strike and Partial Motion to Dismiss (ECF Nos. 33, 34). For the following reasons, the Motion to Strike is denied and the Partial Motion to Dismiss is granted in part and denied in part.

### BACKGROUND

The following facts, drawn from the Second Amended Complaint (ECF No. 32), are taken as true for the purpose of resolving the Partial Motion to Dismiss. *See Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018).

Plaintiffs Irvin W. McKay and Cindy L. McKay have resided in the same home in Kenduskeag, Maine, for approximately forty years. This case involves a mortgage loan on their home that they received in August 2007 ("the mortgage loan"). Mr. McKay executed

the promissory note for the mortgage loan, both McKays executed the mortgage deed, and Defendant Fay Servicing, LLC, currently services the loan.

Around December 2018, Mr. McKay could no longer afford monthly payments and the mortgage loan went into default. Fay Servicing began servicing the McKays' mortgage loan sometime before November 2019, after the default. Around July 2020, Fay Servicing offered to permanently modify the mortgage loan and reduce monthly payments if Mr. McKay made six trial payments over six months. The McKays timely made all trial plan payments.

With the trial plan complete, Fay Servicing sent the McKays a Loan Modification Agreement dated January 15, 2021. The agreement provided that, "[a]s of November 1, 2020, the principal amount payable under the Note and Security Agreement is $100,000, consisting of the unpaid amount(s) loan[ed] to Borrower by Lender plus any interest and other amounts capitalized." Second Am. Compl. at 5, ¶ 34. It did not list or state any other amounts due on the mortgage. The McKays and Fay Servicing executed the Loan Modification Agreement on February 4, 2021, and April 27, 2021, respectively. The McKays signed the agreement with the understanding that the $100,000 balance (plus interest and escrow) was the only remaining amount due. Since the trial payment plan and loan modification, the McKays have consistently made monthly payments in the amounts identified by Fay Servicing.

Despite the McKays' compliance, Fay Servicing, acting as servicer for the mortgage

loan, hired a law firm to sue Mr. McKay in this Court ("the First Suit").[1]  The First Suit—filed after Mr. McKay made several trial payments, but before the Loan Modification Agreement was executed—alleged in part that Mr. McKay was in default on the mortgage loan.[2]  When Fay Servicing directed the law firm to file the case, it did not mention that it had already received five trial payments from Mr. McKay, or that it had offered to permanently modify the mortgage loan if Mr. McKay made all six trial payments.  Mr. McKay filed a counterclaim against Fay Servicing and other parties, alleging abuse of process and breach of the Maine mortgage servicer duty of good faith.  Fay Servicing had the law firm dismiss the claims against Mr. McKay in March 2021, but Mr. McKay's counterclaim remained pending.

To resolve the counterclaim, Fay Servicing and Mr. McKay reached a settlement agreement on May 21, 2021 ("the First Settlement Agreement").[3]  As part of the First Settlement Agreement, Fay Servicing and the McKays agreed to release all claims then-existing between them.[4]  The First Settlement Agreement did not provide that any attorney's fees, litigation costs, or other charges could be added to Mr. McKay's mortgage loan obligations.  But, after executing the First Settlement Agreement, Fay Servicing sent

---

[1] *See U.S. Bank Tr. Nat'l Ass'n v. McKay*, No. 1:21-cv-00013-JDL (D. Me. filed Jan. 8, 2021, and dismissed May 21, 2021).  At the time, Fay was servicing the mortgage loan on behalf of the plaintiff in the First Suit, U.S. Bank Trust, N.A., as trustee of Citigroup Mortgage Loan Trust 2018-A.

[2] The First Suit did not seek foreclosure, but the law firm that Fay hired filed a purported "Affidavit of Commencement of Foreclosure" in the Penobscot County Registry of Deeds characterizing the First Suit as a foreclosure action.

[3] The settlement agreement also included one or more entities who were involved in the First Suit but are not parties to the present case.

[4] Although not a party to either the First Suit or her husband's counterclaim, Cindy McKay was a "releasor" under the terms of the First Settlement Agreement.  Second Am. Compl. at 8, ¶ 51.

mortgage statements to Mr. McKay in May, June, July, and August 2021 with balances for "recoverable corporate advances" on top of the regular monthly payment due. The "advances," which ran as much as $4,409.08, included purported "litigation costs" and a "foreclosure attorney fee."

In response, Mr. McKay filed suit against Fay Servicing in this Court ("the Second Suit"),[5] alleging violations of federal and state fair debt collection practices laws and breach of the Maine mortgage servicer duty of good faith. The McKays and Fay Servicing executed a settlement agreement on November 17, 2021, and December 2, 2021, respectively ("the Second Settlement Agreement"), after which the Second Suit was dismissed. The Second Settlement Agreement provided generally that the McKays' mortgage was "current," explaining further that "as of the Effective Date, nothing more is owed on the Loan, other than outstanding principal and interest since [the] last payment." Second Am. Compl. at 11, ¶ 61. The Second Settlement Agreement did not require the McKays to pay Fay Servicing for litigation costs related to either the First Suit or Second Suit.

Days after executing the Second Settlement Agreement, Fay Servicing sent a mortgage statement to the McKays' attorney. The statement included new charges for litigation costs, amounting to a $925 balance owed for "recoverable corporate advances." The McKays' attorney contacted Fay Servicing's counsel, and Fay Servicing agreed to make a "correction" and "reclassify" the litigation costs as "non-recoverable." Second

---

[5] *See McKay v. Fay Servicing LLC*, 1:21-cv-00236-JDL (D. Me. filed Aug. 18, 2021, and dismissed Dec. 29, 2021).

Am. Compl. at 12, ¶ 67.  Because the issues between the parties appeared to be resolved, the McKays' attorney notified Fay Servicing in January 2022 that his representation of the McKays had terminated.  However, in February 2022, the monthly mortgage statement from Fay Servicing included, yet again, new charges for "litigation costs," this time resulting in a "recoverable corporate advances" balance of $1,050.  From February 2022 through August 2023, Fay Servicing sent monthly mortgage statements to Mr. McKay that included the "balance" of $1,050 for legal fees and expenses that Fay Servicing incurred during the First and Second Suits.  Receiving those mortgage statements made the McKays feel "desperate," "helpless," "constant[ly]" fearful, distressed over the prospect of further litigation, and insecure about their housing.  Second Am. Compl. at 21, ¶¶ 108, 110.

Around the same time as the events underlying the McKays' claims, Fay Servicing sent mortgage statements to another borrower showing a balance for "recoverable corporate advances" that included attorney's fees and litigation costs.  That borrower, like the McKays, had previously entered into a settlement agreement, signed by Fay Servicing, that did not provide for adding fees to the borrower's loan account.  The borrower sued Fay Servicing over the "recoverable corporate advances," and Fay Servicing settled that matter in May 2022.

Against that backdrop, the McKays initiated this action against Fay Servicing in the Maine Superior Court in August 2023.  Fay Servicing removed the case to this Court in September 2023, and the McKays filed their Second Amended Complaint in April 2024. The McKays assert the following counts against Fay Servicing in the Second Amended Complaint: (1) violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C.

§§ 1692–1692p (Count I); (2) breach of the Maine mortgage servicer duty of good faith, 14 M.R.S. § 6113 (Count II); (3) intentional infliction of emotional distress (Count III); and (4) fraudulent misrepresentation (Count IV).

**DISCUSSION**

Fay Servicing moves to strike portions of the Second Amended Complaint under Rule 12(f) and to dismiss Counts III and IV under Rule 12(b)(6).  Fay Servicing argues that the Court should strike numerous paragraphs from the Second Amended Complaint (specifically, paragraphs 28–69, 77–102, and 113–17) as "immaterial" or "impertinent" to this case, either because they predate the parties' Second Settlement Agreement or do not involve the McKays.  Fay Servicing also seeks dismissal of the McKays' claims for intentional infliction of emotional distress and fraudulent misrepresentation (Counts III and IV), arguing that the McKays have not pleaded sufficient facts that, if proven, would plausibly support those claims.  The McKays oppose striking the challenged allegations and dismissing Count III, but they consent to dismissing Count IV without prejudice.  Count IV is dismissed without prejudice, and I consider the other issues in turn.

**A.     Motion to Strike**

Rule 12(f) provides in part that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Immaterial matters are those having no important relationship to the parties' claims or defenses.  *McGlauflin v. RCC Atl. Inc.*, 269 F.R.D. 56, 58 (D. Me. 2010).  Impertinent matters are essentially the same; they are not relevant to the issues in question.  *See Impertinent Matter*, Black's Law Dictionary (12th ed. 2024).  "[W]hile ruling on a

motion to strike is committed to the district court's sound judgment, 'such motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion.'" *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (quoting *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985)).  "[S]triking a portion of a pleading is a drastic remedy and . . . it is often sought by the movant simply as a dilatory or harassing tactic."  *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1380 (3d ed. 2011)).  Consequently, a district court should grant a motion to strike only where it is clear that the challenged matter has no possible bearing on the parties' dispute. *McGlauflin*, 269 F.R.D. at 57.

Fay Servicing contends that the First and Second Settlement Agreements prevent the McKays from bringing claims related to any conduct that predates the Second Settlement Agreement, which Fay Servicing executed on December 2, 2021.  It follows, according to Fay Servicing, that the earlier factual allegations in the Second Amended Complaint (specifically, paragraphs 28–69 and 89–102) are "immaterial" and "impertinent" to this case and should be stricken under Rule 12(f).  Fay Servicing also argues that the Court should strike paragraphs 77–88 and 113–17 because they describe a separate dispute that involves Fay Servicing, but not the McKays.  The McKays respond that the challenged paragraphs are material and pertinent to the claims in this case because they are important to several elements of their claim for intentional infliction of emotional distress: the extent of their emotional distress; whether Fay Servicing acted intentionally or recklessly; and whether Fay Servicing's conduct was extreme and outrageous.  The McKays also argue that the pre-settlement allegations provide important historical context

for the claims in this case, and that all the challenged allegations support the McKays' claim for breach of Maine's mortgage servicer duty of good faith and request for punitive damages.

The McKays have the better argument.  Although the First and Second Settlement Agreements may limit the claims that the McKays can successfully bring,[6] the releases do not necessarily render the pre-settlement allegations "immaterial" or "impertinent" under Rule 12(f).  Here, "[m]any of the challenged allegations provide relevant background information," even though "they involve events that precede the date of release of claims in a settlement agreement between the parties." *Catling v. York Sch. Dep't*, 2:19-cv-00110-DBH, 2019 WL 3936386, at *5 (D. Me. Aug. 20, 2019), *adopted*, 2019 WL 4455986 (D. Me. Sept. 17, 2019).  The pre-settlement allegations provide context about the historical relationship between Fay Servicing and the McKays and thereby inform the claims advanced by the McKays.  Additionally, because the allegations about Fay Servicing's conduct in a separate, factually similar matter may be relevant to whether Fay Servicing has a pattern or practice of violating the Maine mortgage servicer duty of good faith, "I cannot conclude that 'it is clear' that the challenged allegations 'have no possible bearing on the subject matter of the litigation.'"  *Id.* (quoting *McGlauflin*, 269 F.R.D. at 57); *see* 14 M.R.S. § 6113(4)(B) (permitting recovery of damages "for a pattern or practice of the mortgage service[r] violating the duty of good faith").  Because Fay Servicing has not shown that the challenged allegations are immaterial or impertinent to this case, the drastic remedy of striking substantial portions of the Second Amended Complaint is not warranted.

---

[6] Neither party has supplied the Court with either of the settlement agreements between them.

The Defendant's Motion to Strike is denied.

## B.  PARTIAL MOTION TO DISMISS

To evaluate Fay Servicing's Partial Motion to Dismiss, I take the Second Amended Complaint's well-pleaded facts as true and draw all reasonable inferences in the McKays' favor.  *Barchock*, 886 F.3d at 48.  "Well-pleaded facts must be 'non-conclusory' and 'non-speculative.'"  *Id.* (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).  To withstand a motion to dismiss, a "complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

Fay Servicing argues that the McKays have failed to state a claim for intentional infliction of emotional distress (Count III).  Under Maine law, a claim for intentional infliction of emotional distress requires four elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Argereow v. Weisberg*, 195 A.3d 1210, 1219 (Me. 2018) (quoting *Curtis v. Porter*, 784 A.2d 18, 22–23 (Me. 2001)).  Fay Servicing contends that the McKays have failed to allege facts that, if proven, could satisfy the first and second elements.  I conclude that the facts alleged do not meet the second element.

"The determination of whether the facts alleged are sufficient to establish that the defendant's conduct is 'so extreme and outrageous to permit recovery' is a question of law

9

for the court to decide." *Id.* (quoting *Champagne v. Mid-Maine Med. Ctr.*, 711 A.2d 842, 847 (Me. 1998)).  But "[w]here reasonable people may differ, it is for the jury . . . to determine whether, in a particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 616 (Me. 1996) (alteration omitted) (quoting *Rubin v. Matthews Int'l Corp.*, 503 A.2d 694, 699 (Me. 1986)).

"[A] defendant's extreme and outrageous conduct 'may be found in the totality of the circumstances.'" *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 105 (D. Mass. 2006) (quoting *Gouin v. Gouin*, 249 F. Supp. 2d 62, 73 (D. Mass. 2003)) (applying Massachusetts law).  Nevertheless, the circumstances must engender a profoundly disturbing scenario, one that is "atrocious" and "utterly intolerable," exceeding "all possible bounds of decency." *Colford*, 687 A.2d at 617.  The mere pursuit of financial self-interest, even by unscrupulous means, does not ordinarily suffice to meet this high standard. *See*, *e.g.*, *James v. GMAC Mortg. LLC*, 772 F. Supp. 2d 307, 324 (D. Me. 2011); *Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me. 1995).

For scale, viable claims have involved a landlord renting a home to a family with minor children after the State declared the premises a lead hazard, recklessly threatening the children's lifelong health and wellness, *Bratton v. McDonough*, 91 A.3d 1050, 1058 (Me. 2014), and a son's abuse of his aged parents through bogus threats of eviction proceedings despite having no right to evict and his parents' advanced age and poor health coupled with unwarranted threats to have one parent declared mentally incompetent, *Latremore v. Latremore*, 584 A.2d 626, 630 (Me. 1990).  Non-viable claims have included

allegations of unlawful and discriminatory termination of employment and humiliating demotions, *Berry v. WorldWide Language Res., Inc.*, 716 F. Supp. 2d 34, 53 (D. Me. 2010); *Smith v. Heritage Salmon, Inc.*, 180 F. Supp. 2d 208, 223 (D. Me. 2002), harms having rough parity with the harms described by the McKays in terms of the degree of the offensiveness of the conduct.  Comparable scenarios involving improper collection efforts have been rejected at the pleading stage.  *See Fogg v. Ocwen Loan Servicing, LLC*, No. 2:14-cv-454, 2015 WL 1565229, at **8–10 (D. Me. Apr. 8, 2015); *Beaulieu v. Bank of Am., N.A.*, No. 1:14-cv-00023, 2014 WL 4843809, at **3, 7–8 (D. Me. Sept. 29, 2014); *cf. Hamilton v. Fed. Home Loan Mortg. Corp.*, No. 2:13-cv-00414, 2015 WL 144562, at *3, 16 (D. Me. Jan. 12, 2015) (involving a "litany" of alleged misconduct, including sending a default notice in which every listed debt and fee was incorrect, changing locks on the debtor's home, barring entry until payment arrangements were made, allowing agents into the home without permission, and posting a variety of notices on the property).[7]

Viewed from the perspective of the McKays, and in the light most favorable to them, this case has an element of "here we go again," and no doubt any reasonable person would be angered and upset by Fay Servicing's alleged conduct.  However, the facts do not depict a clearly wrongful utilization of litigation insofar as the First Suit resulting in the First

---

[7] According to the Restatement: "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests."  Restatement (Second) of Torts § 46 cmt. e (Am. L. Inst. 1965).  "In particular . . . landlords . . . and collecting creditors have been held liable for extreme abuse of their position."  *Id.*  But even such "actor[s] ha[ve] not been held liable for mere insults, indignities, or annoyances that are not extreme or outrageous."  *Id.*  "Repeated harassment," on the other hand, "may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress."  *Sindi v. El-Moslimany*, 896 F.3d 1, 21 (1st Cir. 2018) (quoting *Boyle v. Wenk*, 392 N.E.2d 1053, 1056 (Mass. 1979)) (applying Massachusetts law).

Settlement Agreement is concerned.  Nor was Fay Servicing's billing of fees associated with prior litigation, including litigation it had not instituted, the kind of act that can fairly be regarded as atrocious and utterly intolerable in a civilized society.

### CONCLUSION

The Defendant's Motion to Strike and Partial Motion to Dismiss (ECF Nos. 33, 34) are **GRANTED IN PART** and **DENIED IN PART** as follows: Defendant's Motion to Strike is **DENIED**; Defendant's Partial Motion to Dismiss Count III is **GRANTED**; and Count IV of the Second Amended Complaint is **DISMISSED** without prejudice.

SO ORDERED.

Dated this 9th day of August, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge